**CARNEGIE NAT. BANK v. CITY OF WOLF POINT, Mont., et al.**

**GLESSNER v. SAME.**

**No. 9248.**

Circuit Court of Appeals, Ninth Circuit.
March 25, 1940.

Rehearing Denied May 14, 1940.

Arlie M. Foor, of Wolf Point, Mont., and Robert N. Erskine, of Chicago, Ill., for appellants.

Frank M. Catlin, of Wolf Point, Mont., and H. C. Hall and Edw. C. Alexander, both of Great Falls, Mont., for appellee City of Wolf Point.

Before GARRECHT, STEPHENS, and HEALY, Circuit Judges.

GARRECHT, Circuit Judge.

The question involved in this case is whether the District Court abused its discretion in dismissing the case for want of prosecution. Welch v. Ruggles-Coles Eng. Co., 2 Cir., 19 F.2d 288, 289; Carnegie Steel Co. v. Colorado Fuel & Iron Co., 8 Cir., 14 F.2d 1, 4; Facer Forged Steel C. W. & L. W. Co. v. Carnegie Steel Co., 3 Cir., 295 F. 134, 135. Orderly disposition of the appeal requires that we outline, as briefly as possible, the events leading up to this order of the court below.

On or about March 10, 1919, the city council of the City of Wolf Point, Montana, authorized and confirmed the issuance of bonds in the amount of $37,966.53, for the purpose of making certain improvements within an area designated as Special Improvement District No. 12, comprising 400 lots within said city. Said bonds were issued by the City of Wolf Point, numbered 1 to 75, inclusive, of the face amount of $500 each, bearing interest at the rate of 6% per annum, maturing January 1, 1929. The same resolution levied a special assessment against all property lying within the boundaries of said district in the sum of $37,966.53, and each lot therein bore a certain fixed amount of the total sum; the sums so assessed against each lot or parcel were divided into ten equal installments, with interest at the rate of 6% per annum until paid; the installments and interest were designated as an assessment fund irrevocably pledged to and for the payment of the bonds. Bonds numbered 1 to 25, inclusive, were issued and dated October 9, 1918; bonds numbered 26 to 54, inclusive, November 20, 1918; and bonds numbered 55 to 75, inclusive, May 26, 1919. All of the said bonds matured January 1, 1929, and all of them have been paid except bonds numbered 42 to 75, inclusive, amounting to the total sum of $17,000. On May 24, 1929, bonds numbered 42 to 49, inclusive, were called for payment; on July 13, 1929, bonds numbered 50 to 52, inclusive, were called for payment; and on January 18, 1930, bond No. 53 was called for payment. The bonds numbered 42 to 53, inclusive, although called, were not paid because interest after maturity was demanded.

Between November 30, 1921, and May 31, 1922, there were diverted by the city sums of money belonging to the District, and placed in other funds, the total of which amounted to $3,729.54. This money was returned to the fund May 6, 1929.

Some of the installments on the individual assessments were not paid and the installments became delinquent. Many of the lots upon which the assessments had become delinquent were taken over by the county under tax deed, and of these, some were sold; from these facts the master, taking into consideration, also, the status of the delinquent parcels upon which tax deed had not issued, found that there would not be realized a sufficient sum to ever discharge the bonds outstanding in full.

On May 22, 1930, the Hanchett Bond Company brought suit against the City of Wolf Point, Montana, alleging the jurisdictional facts; that it was the owner of bonds numbered 45 to 58, inclusive, and No. 75, of the issue described above; and that certain bonds had not been paid. In addition, it alleged the names of the

holders of the remaining bonds outstanding. The plaintiff asked that an accounting be had of all the moneys collected by the defendant City for Improvement District No. 12; that payment of the bonds by the City of Wolf Point be decreed; that the defendant City be compelled to pay into the assessment fund all money due and owing thereto; that the rights of the bondholders be determined; and for other and further relief. The other bondholders were listed in the complaint as defendants. The City of Wolf Point, Montana, filed a separate answer which alleged that it had received $48,873.15 for application towards the payment of the bonds and interest, and admitted that there remained on hand the sum of $6,273.34. The answer also admitted uncollected and delinquent assessments amounting to $7,890.08. The other defendants, with the exception of one D. W. Schreiber, filed a joint answer. A default judgment apparently was entered against Schreiber, which was later vacated upon motion of Minnie Luebbe, the successor in interest. All parties, except the City of Wolf Point, stood in virtually the same position, save that they differed as to the order in which the bonds were payable.

The matter was submitted to a special master, who took testimony, made a report, findings of fact, conclusions of law, and recommendations. The master recommended that the court find the ownership of the outstanding bonds and the amounts owing to each of the owners, and listed these names and numbers; that interest at the rate of 8% per annum from January 1, 1929, be paid the owners of the outstanding bonds on the face amount held by them; that moneys received by the City of Wolf Point belonging to the improvement district be prorated among the bondholders; that a judgment against the City be granted in the sum of $11,032.-24, which the City had on hand, and the money prorated; that the court grant the bondholders judgment for interest on certain sums illegally removed from the District No. 12 fund, from date of withdrawal to date of repayment to said fund; that if any part of the judgment remain unpaid and the City collect or receive sums of money belonging to said district which should be applied to the payment thereof, and fail or refuse so to do, an order to show cause may be issued upon petition of a judgment creditor or creditors. On January 10, 1933, the present appellant, Carnegie National Bank, was substituted in the place and stead of the original plaintiff, Hanchett Bond Company.

May 2, 1933, District Judge Pray filed a memorandum opinion substantially adopting the report of the special master, D.C., 4 F.Supp. 385. The master had recommended that interest on the unpaid bonds be computed at the rate of 8% per annum from January 1, 1929, but the court's decision held that the bonds bore the interest rate of 6% per annum from the date thereof, whether before or after maturity, and that the City of Wolf Point could not stop the running of that interest by the expedient of calling the bonds and refusing payment.

The next entry in the record is under date of January 10, 1939, when District Judge Baldwin entered an order requiring the parties to show cause why the action should not be dismissed, and fixing January 21, 1939, as the return day. On this latter date counsel for the bondholders presented an answer to the order to show cause and objections to dismissal of the case, obtained leave to submit proposed findings of fact and conclusions of law, and the matter was taken under advisement by Judge Baldwin. The proposed findings and conclusions were lodged in the clerk's office February 10, 1939, and on the same day the said District Judge filed an order of dismissal for want of prosecution. Both Carnegie National Bank, the plaintiff, and Hazel Graham Glessner, as executrix of the estate of James G. Glessner, a nominal defendant, appeal from that order. They join in designating the record on appeal and the Statement of Points relied upon, and, on stipulation, the appeals were consolidated for briefing and hearing. We have treated the appeals as a single case.

Section 9317, Revised Codes of Montana, provides:

"An action may be dismissed or a judgment of nonsuit entered in the following cases:

\* \* \* \* \*

"6. By the court, when, after verdict or final submission, the party entitled to judgment neglects to demand and have the same entered for more than six months; \* \* \*."

The cases under this subdivision of the section seem to hold that the word "may" in the first clause of the section is mandatory in a case which falls squarely within its terms (State ex rel. Stiefel v. District Court, 37 Mont. 298, 304, 96 P. 337; Kasun

v. Todevich, 71 Mont. 315, 321, 229 P. 714), but that if the judgment is entered before the motion, the judgment is valid. It is further held that the word "neglects" does not mean merely "fails" or "omits" and that if the party is without fault, the action will not be dismissed (Rule v. Butori et al., 49 Mont. 342, 344, 141 P. 672), as where he was not aware of or notified, of the decision through fault of the clerk of the court. A dismissal under this subdivision does not bar future action as it is not on the merits. Pullen v. City of Butte, 45 Mont. 46, 57, 121 P. 878. It will not be disturbed in the absence of an apparent abuse of discretion (State Savings Bank v. Albertson, 39 Mont. 414, 420, 102 P. 692), but a mere lapse of time is not of itself sufficient to justify a dismissal.

■ This is a suit in equity and the Conformity. Act, 28 U.S.C.A. § 724, by its own provisions, was inapplicable, and therefore we are. not bound to follow the Montana Statute and decisions thereunder. The Conformity Act was, however, superseded by the Federal Rules of Civil Procedure (48 Stat. 1064, 28 U.S.C.A. § 723b) and by Rule 86 of said rules, 28 U.S.C.A. following section 723c, the latter govern all proceedings in actions brought after the effective date thereof (September 16, 1938) and all further proceedings in actions then pending, except where in the opinion of the court the application of the Rules would not be feasible or would work injustice. Rule 41 of the Federal Rules of Civil Procedure governs dismissal of actions and subdivision (b) permits a defendant to move for dismissal of an action for failure of the plaintiff to prosecute. The rule does not provide for any dismissal of an action or suit by the court of its own motion, but subdivision (b) of Rule 41 concludes: "Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and *any dismissal not provided for in this rule,* other than a dismissal for lack of jurisdiction or for improper venue, *operates as an adjudication upon the merits.*" [Italics supplied.] Rule 48-3 of the Rules of the District Court of the United States for the District of Montana does not appear to be in conflict with Rule 41 (b), supra.

The order to show cause was entered January 10, 1939, and the order of dismissal February 10, 1939. There does not appear in the record any evidence of a determination by the judge who issued the order to show cause and made the order of dismissal that the application of the Rules of Civil Procedure would not be feasible or would work an injustice, and we assume that the Rules are applicable. If so, the dismissal would be on the merits. under the sentence quoted above, because the court did not provide otherwise in its order of dismissal.

There are decisions, of course, which hold that a dismissal for want of prosecution is not on the merits and consequently is not a bar to a subsequent suit on the same cause of action. Compare Pueblo de Taos v. Archuleta et al., 10 Cir., 64 F.2d 807, 812; Superior Oil Co. v. Superior Court, 6 Cal.2d 113, 56 P.2d 950, 952.

The view we have taken on this appeal, however, renders it unnecessary for us to discuss whether or not the order of the court below was with or without prejudice.

■ We have referred to the fact that Rule 41 of the Federal Rules of Civil Procedure does not specifically provide that a court may dismiss for want of prosecution, but that it does not limit the power of a court to dismiss to those instances enumerated because it suggests that there might be dismissals not provided therein. In any event, it is well settled, "that a court of equity has general authority, independently of statute or rule, to dismiss a cause for failure or want of diligence in prosecution, in the exercise of a sound judicial discretion". Longsdorf, Cyc.Fed. Proc., vol. 4, p. 40, § 1024; Buck v. Felder, D.C.Tenn., 208 F. 474, 477; Colorado Eastern Ry. Co. v. Union Pac. Ry. Co., 8 Cir., 94 F. 312, 313. We are satisfied, therefore, that a dismissal for failure or want of diligence is within the power of a court of equity.

As we approach the problem of whether or not the District Judge abused his discretion, we must, of course, be mindful of the state of the case at the time of dismissal—a decision rendered in favor of the plaintiff nearly six years prior thereto, and awaiting findings, conclusions, and entry of decree. The case was in this state when the District Judge issued the order to show cause.

Is a mere lapse of time sufficient justification of the determination of a judge sua sponte to dismiss a cause for want of prosecution? Should any distinction be made between a case which was never brought to trial and one in which the plaintiff Bank secured a decision in its

favor and there remained only the formal entry of findings and decree? Our attention has not been drawn to a case squarely in point, and we have found none; the cases cited by both sides are in hopeless conflict.

■ There was no motion to dismiss filed by the appellee City of Wolf Point until some months after the entry of the order of dismissal (although a paper denominated as such appears to have been served on counsel for appellant in 1934). No reason is to be found in the record why Judge Baldwin entered the order to show cause in a case with which he was obviously unfamiliar. A speedy and just termination of all litigation is to be desired and worked for and is essential in the nature of a well-ordered administration of justice. Thus courts are given the power to prod dilatory counsel into action and the stimulus is oftentimes a threat of dismissal for failure to prosecute. Obviously the suit filed by appellant Bank was not filed for the purpose of delay, or for its nuisance value, for it was prosecuted diligently enough down to decision in its favor. Counsel for appellants were at fault in failing or neglecting to conclude the matter. It was the duty of appellants to press the matter forward to a conclusion, but they were not alone at fault because the Answer to the Order to Show Cause, filed by counsel for the bondholders, which was in the form of an affidavit, asserted that proposed findings of fact and conclusions of law and form of decree were twice presented to counsel for appellee City of Wolf Point, which the latter declined to accept. No answer was made to this affidavit until long after the entry of the order of dismissal. As the case stood, appellants had won the decision, but neglected to secure a decree thereon. To be summarily deprived of the fruits of victory now would appear a penalty so harsh that only extreme provocation would justify it. Appellees have not been injured by the delay in entering a decree; the City at no time made an effort to pay its indebtedness or even collect the assessments and it was in no worse position at the end than at the beginning of the period of indifference.

Judge Pray, who had tried the case and had rendered the decision, had manifested no impatience that the findings and conclusions had not been settled. It appears in the record that the proposed findings of fact and conclusions of law were "lodged" with the Clerk of the Court before the order of dismissal was entered. On the record the cause was still under submission to Judge Pray, and we entertain grave doubt whether Judge Baldwin could have considered the findings proposed, inasmuch as the judge who heard the case was available. In the circumstances it was an abuse of discretion for another judge to assume to dismiss the suit. Compare Hardy v. North Butte Mining Co., 9 Cir., 22 F.2d 62. The order appealed from renders ineffectual the decision of a judge of equal rank, to whom the cause was originally submitted, by another judge who injected himself into the case on his own initiative. It was said in Shreve v. Cheesman, 8 Cir., 69 F. 785, 791, "that the various judges who sit in the same court should not attempt to overrule the decisions of each other, especially upon questions involving rules of property or of practice, except for the most cogent reasons". See Plattner Implement Co. v. International Harvester Co., 8 Cir., 133 F. 376, 378. On the peculiar facts before us it was a manifest injustice to dismiss the suit.

The order of the court below is reversed without limiting the right of appellee City of Wolf Point to move for dismissal if appellants neglect seasonably to bring the case to a conclusion.

Reversed with directions.