IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

———————————————

JOHN JURJU, *Plaintiff/Appellee,*

v.

FLORIN ILE, et al., *Defendants/Appellants.*

———————————————

FLORIN ILE, et al., *Plaintiffs/Appellees,*

v.

JOHN JURJU, et al., *Defendants/Appellants.*

———————————————

Nos. 1 CA-CV 22-0167
1 CA-CV 22-0289
(Consolidated)
FILED 8-1-2023

———————————————

Appeal from the Superior Court in Maricopa County
No. CV2021-017033
The Honorable Richard F. Albrecht, Judge *Pro Tempore*

No. CV2021-053924
The Honorable Sara J. Agne, Judge

**DISMISSED IN PART; AFFIRMED IN PART**

———————————————

COUNSEL

Ivan & Associates, Glendale
By Florin V. Ivan, Debra L. Hanger, Justin M. Clark
*Counsel for Plaintiff/Appellee/Defendants/Appellants Jurju*

Monahan Law Firm, PLC, Glendale
By Patrick J. Monahan, Sydney C. Brewer
*Counsel for Defendants/Appellants Florin Ile and Ancuta Ile*

Owens & Pyper, PLC, Scottsdale
By Bradley T. Owens
*Counsel for Defendant/Appellant Paradise Valley Senior Retreat, LLC*

---

## OPINION

Judge Angela K. Paton delivered the opinion of the Court, in which Presiding Judge Jennifer M. Perkins and Judge D. Steven Williams joined.

---

**P A T O N**, Judge:

¶1        In this consolidated appeal, Florin and Ancuta Ile and Paradise Valley Senior Retreat, LLC ("Retreat" and collectively, the "Iles") appeal the entry of a forcible entry and detainer ("FED") judgment against them, arguing that the superior court failed to resolve essential issues. Separately, John and Livia Jurju (the "Jurjus") appeal a preliminary injunction issued by another division of the superior court prohibiting them from enforcing the FED judgment.

¶2        For the following reasons, we dismiss the FED appeal, CV 22-0167, because we lack jurisdiction to hear it and affirm the preliminary injunction, CV 22-0289.

### FACTS AND PROCEDURAL HISTORY

¶3        The Iles and Jurjus had a business relationship from 2008 to 2021. The Iles characterize the relationship as a general partnership: the Jurjus contributed a building to the Retreat and the Iles paid the repair and daily management costs associated with the business. According to the Iles, in 2019, the parties orally agreed that the Iles would purchase the building from the Jurjus and buy them out of the partnership. The Iles paid money in excess of rent to the Jurjus that they claim went towards the remaining balance on the building's mortgage, writing "Down payment" on those checks.

¶4        The Jurjus, on the other hand, characterize the relationship as a simple lease agreement and the Iles merely rented the building to house

the Retreat. They argue that the purported contributions towards a down payment were just rent payments.

¶5            The parties' relationship broke down in 2021. The Jurjus allege that they gave the Iles notice terminating the lease agreement and requested they vacate the property in July. The Iles, by contrast, claim that the Jurjus reneged on their oral agreement to sell the property to the Iles, deciding instead to take over the business and run it themselves.

¶6            On November 3, 2021, the Jurjus filed a FED action against the Iles in the superior court ("eviction matter"). The next day, in a different proceeding, the Iles filed a civil complaint claiming breach of the alleged contract for the building, seeking damages and temporary and preliminary injunctive relief staying the FED action ("civil matter"). The superior court issued its FED judgment in the eviction matter against the Iles on December 3, 2021. Less than a week later, the court issued a temporary restraining order in the civil matter preventing the Jurjus from enforcing the FED judgment.

¶7            The Iles moved for a new FED trial under Arizona Rule of Procedure for Eviction Actions ("Eviction Rule") 15 on December 8, 2021, which the court denied a month later. The Iles filed a notice of appeal about a month after that, and about three months after the FED judgment issued.

¶8            On March 22, 2022, the superior court in the civil matter preliminarily enjoined the Jurjus from (1) "taking possession of the property, from evicting vulnerable elderly residents, and from interfering with business contracts between [the Iles] and the residents" and (2) collecting the monetary judgment contained in the FED order that "violates or causes violation" of the first part of the injunction. The Jurjus filed a timely notice of appeal.

¶9            As explained below, we do not have jurisdiction over the Iles' FED action appeal. We have jurisdiction over the Jurjus' timely appeal pursuant to Arizona Revised Statutes ("A.R.S.") Section 12-2101(A)(5)(b).

## DISCUSSION

### I.       We lack jurisdiction over the Iles' untimely appeal.

¶10           We have an independent obligation to examine our jurisdiction over an appeal, *Bridgeman v. Certa*, 251 Ariz. 471, 473, ¶ 5 (App. 2021), and lack jurisdiction over an untimely appeal, *see Dowling v. Stapley*, 221 Ariz. 251, 264, ¶ 39 (App. 2009). A party has 30 days to appeal an

3

unfavorable judgment. Ariz. R. Civ. App. P. ("Appellate Rule" or "ARCAP") 9(a). A party may, however, file certain time-extending motions that toll this requirement until the disposition of the motion. ARCAP 9(e). These motions include a motion for a new trial under Arizona Rule of Civil Procedure ("Civil Rule") 59(a) or a motion to alter or amend the judgment under Civil Rule 59(d). ARCAP 9(e)(1)(C), (D).

**¶11** According to the Iles, a motion for a new trial under Eviction Rule 15 is the functional equivalent to a Civil Rule 59 motion. They argue that, because they filed a motion for new trial, their time to file an appeal was extended. But—as the Iles acknowledge—we foreclosed this argument in *Sotomayor v. Sotomayor-Muñoz*, 239 Ariz. 288, 290–91, ¶ 8 (App. 2016). There, we held that because a motion under Eviction Rule 15 was not specifically listed among the time-extending motions of Appellate Rule 9(e), filing such a motion does not extend the time for filing a notice of appeal. The Iles ask us to disagree with this court's prior holding in *Sotomayor*, which we decline to do.

**¶12** The Iles argue that because the Eviction Rule 15 "post-judgment motion raise[d] issues that may be raised in a motion for a new trial, it should be treated as a time extending motion," identical to Civil Rule 59. But our jurisdiction is derived from two sources: our state constitution and statutes. *See Grosvenor Holdings, L.C. v. Figueroa*, 222 Ariz. 588, 594–95, ¶ 13 (App. 2009).

**¶13** The statute governing appeals from FED proceedings provides, in relevant part, that appeals may be taken "as in other civil actions." A.R.S. § 12-1182(A). Thus, we must continue to apply the Rules of Civil Appellate Procedure as we would in any other appeal—including Appellate Rule 9(e). When a "rule is clear and unambiguous, we apply it as written without further analysis." *Sherman ex rel. Clayton v. Kenworthy*, 250 Ariz. 65, 68, ¶ 8 (App. 2020). Appellate Rule 9(e) lists Civil Rule 59 as a time-extending motion but does not include Eviction Rule 15. Consequently, an Eviction Rule 15 motion does not extend the time for filing an appeal.

**¶14** Because the notice of appeal in the eviction matter was filed more than 30 days after final judgment was entered, we lack jurisdiction over the untimely appeal from the eviction action and dismiss that appeal.

> II. **The superior court did not err in issuing an injunction to stay enforcement of the FED judgment.**

**¶15**        We confront here two statutes related to the superior court's injunction authority.  One prohibits injunctions issued for certain purposes, Section 12-1802 (the "Anti-Injunction Act"), and the other sets limits on the issuance of an injunction, Section 12-1805 (the "Injunction Limits Act").  We asked the parties to provide supplemental briefing on whether the Injunction Limits Act allows the superior court to stay enforcement of a FED judgment.  The Jurjus argue that the superior court lacked authority to issue the preliminary injunction and did not properly weigh the appropriate factors in doing so.  *See Shoen v. Shoen*, 167 Ariz. 58, 63 (App. 1990) (listing factors to consider in issuing a preliminary injunction).

**¶16**        We review a preliminary injunction for an abuse of discretion but review the interpretation of jurisdictional statutes de novo.  *See TP Racing, L.L.L.P. v. Simms*, 232 Ariz. 489, 492, ¶ 8 (App. 2013).

### A. The superior court found facts sufficient to meet the equitable requirements of the Injunction Limits Act, Section 12-1805.

**¶17**        The Anti-Injunction Act prohibits an injunction "[t]o stay a judicial proceeding pending at the commencement of the action in which the injunction is demanded, unless the restraint is necessary to prevent a multiplicity of such proceedings."  A.R.S. § 12-1802(1).  In other words, the court may not stay pending judicial proceedings unless doing so would prevent the duplication of proceedings.  The Injunction Limits Act similarly restricts when an injunction can be issued: "[a]n injunction shall not be granted to stay any judgment or proceedings at law, except so much of the recovery or cause of action as plaintiff in the complaint shows himself equitably entitled to be relieved against, and so much as will cover the costs."  A.R.S. § 12-1805.  Both statutes contain exceptions to their restrictions.

**¶18**        "An injunction is an equitable remedy, which allows the court to structure the remedy so as to promote equity between the parties." *Scholten v. Blackhawk Partners*, 184 Ariz. 326, 331 (App. 1995).  If the Injunction Limits Act applies here, the superior court in the civil matter could provide equitable relief from "so much of the recovery," *i.e.*, the writ of restitution and prospective eviction, because the Iles demonstrated equitable relief was warranted at the preliminary injunction hearing.

**¶19**        Specifically, the Iles alleged wrongful eviction in the breach of a contract for sale and that resolution of title litigation would entitle them to the property notwithstanding the FED judgment.  These facts, established at a preliminary injunction hearing, are sufficient under the

Injunction Limits Act to demonstrate equity favoring an injunction against the judgment. *See Baltimore Life Ins. v. Harn*, 15 Ariz. App. 78, 81 (App. 1971) ("The plaintiff in an action of an equitable nature must allege sufficient facts that when taken as true entitle it to the relief it seeks."). And the court required the Iles to post a bond "so much as will cover the costs." A.R.S. § 12-1805. Thus, the superior court satisfied the conditions to meet the Injunction Limits Act's exception, allowing it to issue the injunction here.

### i. The 1913 Arizona Code did not implicitly repeal the territorial version of the Injunction Limits Act, Section 12-1805, or reduce its reach.

¶20 The Jurjus argue we should not apply the Injunction Limits Act because it was enacted in the 1901 version of Arizona's territorial code before enactment of the Anti-Injunction Act in 1913, and the more recent enactment "takes precedence." Alternatively, they argue that the latter is more narrowly drawn than the former and should therefore control.

¶21 It is generally disfavored to find an implied repeal of a statute. *See UNUM Life Ins. Co. of Am. v. Craig*, 200 Ariz. 327, 333, ¶ 28 (2001); *see generally* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* at 327–33 (1st ed. 2012). We will find an implied repeal if the statutes "cannot be harmonized to give each effect and meaning." *Cave Creek Unified Sch. Dist. v. Ducey*, 233 Ariz. 1, 7, ¶ 24 (2013). Instead of presuming that the more recent statute controls, we first look to whether we can reconcile the statutes that are in apparent conflict.

¶22 We interpret a statute "to avoid rendering 'any of its language mere "surplusage," [and instead] give meaning to "each word, phrase, clause, and sentence so that no part of the statute will be void, inert, redundant, or trivial."'" *Ariz. State Univ. Bd. of Regents v. Ariz. State Retirement Sys.*, 242 Ariz. 387, 389, ¶ 7 (App. 2017) (quoting *In re Estate of Zaritsky*, 198 Ariz. 599, 603, ¶ 11 (App. 2000) (citation omitted)). Instead of favoring one law over another based on its effective date, we interpret statutes governing the same area of law harmoniously and give full effect to each one. *See Ariz. Dep't of Revenue v. Action Marine*, 218 Ariz. 141, 143, ¶ 10 (2008).

¶23 The two provisions do not conflict. The Injunction Limits Act initially states that injunctions may not be granted to stay "any judgment or proceedings at law." A.R.S. § 12-1805. It then provides an exception when equity favors a stay at the cost of a supersedeas bond. *Id.* The Anti-Injunction Act has a similar prohibition on stays of pending "judicial

proceedings." A.R.S. § 12-1802. But the exception in this section applies when "the restraint is necessary to prevent a multiplicity of such proceedings." *Id.* Although the statutes articulate the same prohibition against staying judicial proceedings, they prescribe different exceptions to the general rule. Read together, the statutes complement each other as tools for contrasting circumstances. We find no implicit repeal.

### ii. The injunction did not violate the prohibition on enjoining contracts not susceptible to specific performance relief.

**¶24** The Jurjus also argue that the injunction was prohibited as one "to prevent breach of a contract, the performance of which would not be specifically enforced." A.R.S. § 12-1802(5). But the court did not enjoin a breach of contract. The court issued a writ of restitution for the premises. *See* A.R.S. § 12-1178. The narrowly drawn injunction prohibited enforcement of the judgment to preserve the status quo. The court did not issue an injunction to perform a contract and the FED action did not purport to resolve whether a contract existed to be enforced by specific performance. Indeed, the court expressly refused to decide that question. We therefore are not persuaded by the Jurjus' argument.

### B. The superior court did not abuse its discretion by finding irreparable harm to the Iles absent the injunction.

**¶25** In determining whether to issue a preliminary injunction, courts must consider: (1) whether the requesting party has a strong likelihood of success on the merits, (2) whether the party will suffer irreparable harm if the injunction is not granted, (3) whether the harm to the requesting party outweighs the harm to the opposing party, and (4) whether public policy favors granting the injunction. *Shoen*, 167 Ariz. at 63.

**¶26** The Jurjus argue the superior court erred by finding the Iles would suffer irreparable harm. The court identified this irreparable harm as interference with the right to purchase the specific property under the contract, and "their rights to the partnership asset." The Jurjus argue that a merely economic harm is never "irreparable" under the *Shoen* factors. But when "a protectable interest is established, irreparable injury is presumed to follow if the interest is not protected." *Phoenix Orthopaedic Surgeons, Ltd. v. Peairs*, 164 Ariz. 54, 59 (App. 1989) (quoting *McRand, Inc. v. Beelen*, 486 N.E.2d 1306, 1313 (Ill. App. Ct. 1985)) (disapproved on other grounds by *Valley Med. Specialists v. Farber*, 194 Ariz. 363 (1999)).

**¶27** Here, the court relied on Ancuta Ile's testimony that "absent an injunction, the business and [the Iles'] reputation would be irreparably

destroyed." *See IB Prop. Holdings, LLC v. Rancho Del Mar Apartments Ltd. P'ship*, 228 Ariz. 61, 65, ¶ 10 (App. 2011) (injunction appropriate where damages are inadequate because "loss is uncertain"). Ancuta Ile testified that the business in its present state (including location, reputation, and goodwill) is "irreplaceable." The Jurjus disagree with that contention, but we will not reweigh the superior court's evaluation of the credibility and weight of Ancuta Ile's testimony. *See id.* at 66, ¶ 13. Reasonable evidence supports the court finding irreparable harm.

### III. We award attorneys' fees to the Jurjus on the FED judgment action and to the Iles on the injunction action.

**¶28** Both parties request attorneys' fees and costs for both appeals. We agree with the Jurjus that the attorneys' fees provision of the lease agreement allows for an award of attorneys' fees incurred in "gaining possession" of the property. We award the Jurjus reasonable attorneys' fees and costs traceable to defending the FED judgment action on appeal upon compliance with Appellate Rule 21.

**¶29** We award the Iles their reasonable attorneys' fees and costs traceable to the preliminary injunction appeal. *See* A.R.S. §§ 12-341, -341.01.

### CONCLUSION

**¶30** We dismiss the appeal from the FED action and affirm the preliminary injunction.



AMY M. WOOD • Clerk of the Court
FILED:   AA

8